UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

VINCENT SEALEY                                                              PLAINTIFF

v.                                                    CIVIL ACTION NO. 3:15cv768-DPJ-FKB

BEAZLEY INSURANCE COMPANY, INC.                                      DEFENDANTS
and AXIS INSURANCE COMPANY

ORDER

     This case is before the Court on Defendant Beazley Insurance Company, Inc.'s

("Beazley") Motion to Dismiss [20].  Because the Court concludes that the assigned claims

Sealey asserts were released by the assignors, the motion is granted.

I.     Facts and Procedural History

     The factual underpinning of this case began in 2002, when Bruister & Associates, Inc.

("BAI"), following the legal advice of attorney David R. Johanson, established an Employee

Stock Ownership Plan ("ESOP").  Between 2002 and 2005, BAI's owner, Herbert C. Bruister,

sold 100% of BAI's shares to its employees through a series of transactions with the ESOP.

Those transactions ultimately led to the Secretary of Labor and two plan participants filing

separate lawsuits alleging that the transactions violated various ERISA provisions (the "ERISA

Actions").  Following a 19-day bench trial on the consolidated cases, the Court entered judgment

in favor of Plaintiffs and against Defendants Bruister, Amy O. Smith, Jonda C. Henry, and the

Bruister Family Limited Liability Company ("BFLLC") for in excess of $6 million.  Following

the entry of judgment, the Court awarded the private Plaintiffs an additional $3.1 million in

attorneys' fees and expenses.

     At the time the ERISA Actions were filed, the plan fiduciaries (Bruister, Smith, and

Henry), BAI, and the ESOP maintained fiduciary-liability-insurance coverage through Beazley

and AXIS Insurance Company.  Bruister and BAI (acting through Johanson) tendered the ERISA

Actions to Beazley for coverage and defense, and Beazley responded by reserving its rights and

setting forth its coverage position.  Beazley also stated that it had retained counsel for its

insureds and would not consent to Johanson serving as defense counsel in the ERISA Actions.

This coverage dispute ultimately led to Bruister, Smith, Henry, and others—all

represented by Johanson—filing Civil Action No. 4:10cv136 against Beazley and AXIS in this

Court in August 2010 (the "Coverage Action").  In general terms, the Coverage Action plaintiffs

demanded defense and indemnity without reservation along with the right to select their own

independent counsel to represent them in the ERISA Actions.  Beazley filed a counterclaim in

which it asserted that no coverage existed under the Policy.

The parties eventually signed the now disputed Confidential Settlement Agreement and

Release (the "Agreement") effective December 1, 2011, that resolved the Coverage Action.

Under the Agreement, Beazley and AXIS agreed to:  (1) withdraw their reservations of rights;

(2) pay defense and indemnity but at reduced policy limits; and (3) allow the Coverage Action

plaintiffs to retain independent counsel to represent them in the ERISA Actions.  The insureds

chose Johanson as their independent counsel, and he and others represented the insureds

throughout the ERISA Actions, ultimately exhausting policy limits before the Court entered its

judgments.

At some point following entry of judgment in the ERISA Actions, Vincent Sealey, the

successful plan-participant plaintiff, obtained assignments from Smith and Henry of any claims

they may have had against Beazley and AXIS.  Sealey, in turn, instituted this case against

Beazley and AXIS on October 23, 2015, asserting that the insurers breached their  fiduciary

duties, engaged in bad faith, breached the terms of their insurance policies, and breached the duty of good faith and fair dealing.

AXIS is no longer a party, but Beazley filed the present Motion to Dismiss on February 29, 2016. In it, Beazley asserts that the December 1, 2011 Agreement barred the assignment of these claims to Sealey or alternatively released them. The matters raised have been fully briefed, and the Court has personal and subject-matter jurisdiction and is prepared to rule.

II.    Standard

In considering a motion under Rule 12(b)(6), the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (per curiam)). But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To overcome a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations and footnote omitted).

Beazley has moved for dismissal on the basis of an affirmative defense—release. *See* Fed. R. Civ. P. 8(c)(1). "[W]hen a successful affirmative defense appears on the face of the pleadings, dismissal under Rule 12(b)(6) may be appropriate." *Kansa Reinsurance Co., Ltd. v.*

*Congressional Mortg. Corp. of Tex.*, 20 F.3d 1362, 1366 (5th Cir. 1994) (quoted in *Wentzell v. JPMorgan Chase Bank, Nat'l Ass'n*, 627 F. App'x 314, 317 (5th Cir. 2015)).

Finally, when considering a motion under Rule 12(b)(6), the Court's review is ordinarily limited "to the facts stated in the complaint and the documents either attached to or incorporated in the complaint. However, courts may also consider matters of which they may take judicial notice." *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017–18 (5th Cir. 1996); *see also Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (explaining that court may consider documents "central to the [plaintiff's claim] and referenced by the complaint"). Here, the Agreement is referenced in the Complaint, is central to Sealey's claims, and was filed under seal in another case before the Court. Compl. [1] ¶ 51; *see Sealey v. Johanson*, No. 3:15cv137-DPJ-FKB, Agreement [66]. So the terms of the Agreement are properly before the Court in reviewing Beazley's motion.

III.    Analysis

Sealey stepped into Smith's and Henry's shoes when he took an assignment of their claims. *See Combo Mar., Inc. v. U.S. United Bulk Terminal, LLC*, 615 F.3d 599, 603–04 (5th Cir. 2010). As such, Sealey is barred from pursuing any claims that Smith and Henry released when they signed the Agreement. But the parties dispute whether the Agreement actually released Smith's and Henry's claims; whether the Agreement constitutes an unenforceable anticipatory release; and whether the Agreement is unconscionable. Each argument will be addressed in turn.

A.    Whether the Claims Fall within the Scope of the Agreement

At the outset, the parties dispute whether Smith and Henry released the claims Sealey

4

now asserts. "Settlement agreements are contracts made by the parties, upon consideration acceptable to each of them, and the law will enforce them." *Chantey Music Pub., Inc. v. Malaco, Inc.*, 915 So. 2d 1052, 1056 (Miss. 2005). The Court "appl[ies] contract law analysis to settlement agreements." *Id.* "'The primary purpose of all contract construction principles and methods is to determine and record the intent of the contracting parties.'" *Facilities, Inc. v. Rogers-Usry Chevrolet, Inc.*, 908 So. 2d 107, 110 (Miss. 2005) (quoting *Royer Homes of Miss., Inc. v. Chandeleur Homes, Inc.*, 857 So. 2d 748, 752 (Miss. 2003)). "In order to determine and record the intent of the contracting parties, [the Court] focus[es] upon the objective language of the contract." *One S., Inc. v. Hollowell*, 963 So. 2d 1156, 1162 (Miss. 2007).

Looking first at the Complaint, Sealey claims that Beazley breached its duties to Smith and Henry in the following respects:

1. Failing to provide defense and indemnity without a reservation of rights;

2. Failing to provide competent, independent, and conflict-free counsel to represent Smith and Henry in the ERISA Actions;

3. Approving and paying conflicted counsel, i.e., Johanson;

4. Failing to monitor Johanson during the ERISA Actions;

5. Failing to ensure that Smith and Henry were able to and did accept settlement offers within available policy limits;

6. Entering into a self-serving, unlawful agreement with conflicted parties that reduced policy limits; and

7. Failing to prevent conflicted counsel from draining available policy limits.

*See* Compl. [1] ¶ 2. In other words, Sealey complains about how Beazley handled its defense and indemnity obligations to Smith and Henry in the ERISA Actions.

5

Whether the Agreement released these claims turns on the terms of the Agreement, which provides in pertinent part as follows:[1]

> 1. . . . Bruister, Smith, Henry, [and others] are collectively referred to herein as the "Bruister Parties" and each, individually, as a "Bruister Party." The Bruister Parties, . . . Beazley, [and others] are collectively referred to herein as the "Settling Parties" and each, individually, as a "Settling Party."
>
> . . . .
>
> 5. The Beazley Policy and the AXIS Policy are referred to herein as the Policies.
>
> . . . .
>
> 10. There is a dispute between Beazley and the Bruister Parties as to, *inter alia*, whether the defense provided by Beazley for the Rader Lawsuit complies with Beazley's obligations under Mississippi law (the "Moeller Issue").
>
> . . . .
>
> 12. Certain of the Bruister Parties filed a civil action against Beazley . . . Civil Action No. 4:10-CV-00136-HTW-LRA . . . (the "Coverage Lawsuit").
>
> . . . .
>
> 14. The 2008 Agreement to Toll, the 2009 Agreement to Extend, the [ERISA Actions], the Form 5500 Audit, and the Moeller Issue are collectively referred to as the "Liability Matters[.]"
>
> 15. The Coverage Lawsuit and the Liability Matters are collectively referred to herein as the "Disputed Matters."
>
> 16. The Settling Parties desire to resolve, settle, and compromise on the terms set forth herein all disputes and potential disputes between and among them
>
> > a. regarding satisfaction of their respective obligations under, and with respect to, the Policies, and/or
> >
> > b. related to the Disputed Matters.

---

[1]Sealey often paraphrases or selectively quotes the Agreement, but as Beazley observes, the meaning is sometimes lost. Accordingly, the Agreement will be quoted at length.

. . . .

22.  Effective on the Agreement Effective Date, . . . each Bruister Party hereby releases, acquits, and forever discharges . . . Beazley . . . from any and all claims, counterclaims, rights, demands, suits, liabilities, causes of action of any kind, character or description (including, without limitation, claims under the Policies and claims for bad faith and/or failure to defend and/or failure to settle and/or claims for failure to procure or misrepresentation(s)), whether for compensatory or punitive damages or any other form of relief, whether known or unknown, which are based on, allege, arise out of, result from, or in any way relate (directly or indirectly) to:

    a.  the Disputed Matters; or

    b.  coverage under the Policies . . . for the Liability Matters; or

    c.  the assertion or handling by Beazley . . . of claims or potential claims under the Policies . . . in any way related to the Liability Matters; or

    d.  the payment or reimbursement by Beazley . . . or the refusal by Beazley . . . to pay or reimburse:

        I.  Loss (as that terms is defined in the Policies);[2] or

        ii.  any other amounts under the Policies; or

        iii.  any amounts tendered to Beazley . . . for payment

    in any way related to the Liability Matters . . . .

. . . .

38.  Except for [certain] representations and warranties . . . , each Settling Party represents and warrants that that Settling Party has not relied upon any representation or inducement of any other Settling Party in connection with that Settling Party's entry into and execution of this Agreement, and each Settling Party releases and waives any claim for fraud, coercion, or duress in connection

---

[2]The Beazley policy defined "Loss" as including "Defense Costs" and "Indemnity Amounts" and defined "Defense Costs" as "reasonable and necessary legal fees and expenses incurred by or on behalf of the Insureds in defending, settling, appealing or investigating any Claim and the cost of appeal, supersedeas, injunction, attachment or similar bonds."  *Sealey v. Johanson*, No. 3:15cv137-DPJ-FKB, Policy [34-1] at 25, 27 (CM/ECF pagination).

with that Settling Party's execution and entry into this Agreement.

39.  Each settling party acknowledges that the foregoing releases in paragraph[] 22 . . . may release claims or defenses that are unknown or unanticipated at this time and may have unintended consequences, but are nonetheless entering into this Agreement as a settlement and compromise of all disputed claims and defenses.

40.  Each Settling Party hereby waives all rights that that Settling Party may have under any statute, rule or common law of any local, state, federal or foreign jurisdiction that would limit the effect of this Agreement or the effect of the releases herein to those claims relating to the transactions or matters that each of the Settling Parties actually knew or should have known to exist at the time of execution of this Agreement . . . .  In this regard, each of the Settling Parties acknowledges that he/she/it may have sustained damages, losses, fees, costs or expenses that are presently unknown and unsuspected, and that such damages, losses, fees, costs or expenses might give rise to additional damages, losses, fees, costs or expenses in the future.  Nevertheless, each of the Settling Parties acknowledges that this Agreement has been negotiated and agreed upon in light of such possible damages, losses, fees, costs or expenses.

. . .

45.  Each Settling Party represents and warrants . . . that it is entering into this Agreement after consultation with, or the opportunity to consult with, counsel of that Settling Party's choosing, and each Settling Party and the person signing below on his/her/its behalf represents and warrants that he/she/it is authorized to do so.

. . .

50.  All of the Settling Parties have contributed to the negotiations leading up to, and the preparation of, this Agreement.  No provision of this Agreement shall be construed against any Settling Party because that Settling Party or its counsel drafted that provision.

*Sealey v. Johanson*, No. 3:15cv137-DPJ-FKB, Agreement [66].  Paragraph 22 of the Agreement

unambiguously releases any and all claims—known or unknown—related to Beazley's handling

of the ERISA Actions.  Such a release includes all the claims Sealey purports to assert in this

case.

8

B.      Whether the Agreement is an Anticipatory Release

According to Sealey, claims "that accrued after the Agreement was executed" were not released by the Agreement.[3]  Relying on cases involving anticipatory releases—like one signed by a parent before enrolling his child in baseball camp—Sealey argues that "[u]nder Mississippi law, '[a] party may not use an anticipatory release as a means to escape liability for tortious acts.'"  Pl.'s Mem. [28] at 11 (quoting *Farragut v. Massey*, 612 So. 2d 325, 330 (Miss. 1992)); *see Quinn v. Miss. State Univ.*, 720 So. 2d 843, 851 (Miss. 1998), *overruled on other grounds by City of Jackson v. Estate of Stewart ex rel. Womack*, 908 So. 2d 703 (Miss. 2005).  For such an anticipatory release to be upheld, "the intention of the parties [must be] expressed in clear and unmistakable language."  *Natchez Reg'l Med. Ctr. v. Quorum Health Res., LLC*, 879 F. Supp. 2d 556, 562 (S.D. Miss. 2012).  And "[c]lauses limiting liability . . . will not be enforced unless the limitation is fairly and honestly negotiated and understandingly entered into."  *Farragut*, 612 So. 2d at 330 (quoting 17 Am. Jur. 2d Contracts §297 n.74 (1991) (internal quotation marks omitted).

As an initial matter, we are not dealing with later-accruing claims in the sense addressed by the anticipatory-release cases.  The eight claims listed above break down into two broad categories.  First, Sealey raises claims for "Beazley's failure to provide coverage under the Policy in accordance with Mississippi law."  Pl.'s Mem. [28] at 11.  Those claims were obviously disputed in the Coverage Action and explicitly released in paragraph 22 of the Agreement.

---

[3]Sealey seems to admit by implication that at least some of the claims he asserts had accrued at the time the Agreement became effective and therefore were covered by the release.

Second, Sealey contends that Beazely breached various duties by allowing Johanson to represent Smith and Henry in the Coverage Action and ERISA Actions and then failing to monitor Johanson and control the litigation.  But those issues were also litigated in the Coverage Action.  Significantly, Smith and Henry's "Fifth Cause of Action (Independent Counsel)" asserted a claim against Beazley for retaining counsel for Smith and Henry in the ERISA Actions without allowing them to retain their own "independent" counsel of choice—Johanson.  Second Am. Compl. [20-1] ¶ 106 (citing *Moeller v. Am Guar. & Liab. Ins. Co.*, 707 So. 2d 1062, 1069 (Miss. 1996).  Under *Moeller*, when an insurer issues a reservation or rights as Beazley did here, a conflict exists and "the insurance carrier should afford the insured ample opportunity to select his own *independent* counsel to look after his interest."  *Id.* at 1070 (emphasis added).

When the Coverage Action settled, the Agreement expressly noted this dispute over the insureds' representation, referring to it as the "Moeller Issue."  Agreement ¶ 10.  The parties agreed that Smith and Henry could retain independent counsel of their choice (Johanson), that Beazley would pay Johanson, and that all claims "relate[d] (directly or indirectly) to" the Moeller Issue were released.  *Id.* ¶¶ 14–16, 22, 27(d).  In other words, the Agreement memorialized the understanding that Johanson would independently represent Smith and Henry in the ERISA Actions and released all claims "relate[d] (directly or indirectly) to" that representation.  Sealey cannot claim that Beazley somehow committed breaches that accrued post-agreement by complying with the terms of the Agreement.  The anticipatory-release cases are a bad fit.

Even assuming the anticipatory-release rule applies in the context of a negotiated compromise of claims, the parties' intent to release future claims is "expressed in clear and

10

unmistakable language" in the Agreement and was "fairly and honestly negotiated." *Farragut*, 612 So. 2d at 330.  To begin, paragraph 16 of the Agreement memorializes the intent to resolve "all disputes and *potential* disputes between" the parties "regarding satisfaction of their respective obligations under, and with respect to, the Policy, and/or . . . related to the Disputed Matters."  *Id.* ¶ 16 (emphasis added).  The term "Disputed Matters" was carefully defined and clearly covers all current claims.  *See id.* ¶ 15.

Paragraph 22 then releases "any and all claims . . . (including, without limitation, claims under the Policies and claims for bad faith and/or failure to defend and/or failure to settle and/or claims for failure to procure or misrepresentation(s)) . . . whether known or unknown, which are based on, allege, arise out of, result from, or in any way relate (directly or indirectly) to . . .  a. the Disputed Matters; or b. coverage under the Policies . . . for the Liability Matters; or c. the assertion or handling by Beazley . . . of claims or potential claims under the Policies . . . in any way related to the Liability Matters; or d. the payment or reimbursement by Beazley . . . or the refusal by Beazley . . . to pay or reimburse."  *Id.* ¶ 22.  To the extent this language is not clear enough, paragraphs 39 and 40 of the Agreement speak to "unknown or unanticipated" claims and damages that could give rise to "additional damages . . . in the future."  *Id.* ¶¶ 39, 40.  Thus, the Agreement demonstrates an intent to release future claims relating to Beazley's duties under the Policy related to the ERISA Actions.

As to the fair-and-honest-negotiation prong, the Agreement expressly states that Smith and Henry "desire to resolve, settle, and compromise on the terms set forth herein all disputes and potential disputes between and among" themselves and Beazley and that they were "entering into this Agreement after consultation with, or the opportunity to consult with, counsel of [their]

choosing." *Id.* ¶¶ 16, 45.  It further provides that "[a]ll of the Settling Parties have contributed to the negotiations leading up to, and the preparation of, this Agreement." *Id.* ¶ 50.  Indeed, the very terms of the agreement demonstrate that this was an arms-length transaction in which Beazely agreed to waive its defenses to the payment of several million dollars in coverage.

Sealey seeks to contradict these representations with extrinsic allegations regarding Johanson's conflicts.  But "[u]nder Mississippi law, where the contract is not ambiguous, the intention of the contracting parties should be gleaned solely from the wording of the contract.  Parol evidence will not be received to vary or alter the terms of a written agreement . . . ." *Turner v. Terry*, 799 So. 2d 25, 32 (Miss. 2001) (citation omitted).  The Agreement reflects that it was fairly and honestly negotiated and understandingly entered into.  Smith and Henry released the claims Sealey now asserts.

C.        Whether the Agreement is Otherwise Unenforceable

Sealey argues that even if the claims were released in the Agreement, the Agreement cannot be enforced due to the presence of undue influence and unconsionability.

1.        Undue Influence

Sealey claims that Johanson—Smith and Henry's selected attorney in both the Coverage Action and the ERISA Actions—"took undue advantage of his conflicted fiduciary relationship with Smith and Henry to cause them to enter into the Agreement to benefit Johanson personally and to benefit Bruister . . . ."  Pl.'s Mem. [28] at 18.

"[P]rovisions in contracts contrary to public policy or where obtained by overreaching duress or undue influence are unenforceable." *First Nat'l Bank of Vicksburg v. Caruthers*, 443 So. 2d 861, 864 n.3 (Miss. 1983).  And a presumption of undue influence arises in transactions

between persons in a fiduciary relationship, such as an attorney-client relationship. *Murray v. Laird*, 446 So. 2d 575, 578 (Miss. 1984); *see also Tyson v. Moore*, 613 So. 2d 817, 823 (Miss. 1992) ("Any transaction in which an attorney may have taken undue advantage of the client is voidable.").

But in the context of the Coverage Action, Beazley was not Smith and Henry's fiduciary, it was an adverse party. *See Sealey v. Johanson*, No. 3:15cv137-DPJ-FKB, 2016 WL 1273882, at *7 (S.D. Miss. Mar. 29, 2016) (finding that insurer owes no "fiduciary duty to an adverse party in the context of coverage litigation"). Smith and Henry had the right to hire counsel of their choice when suing Beazley and did so at their own peril. *Inman v. Am. Home Furniture Placement, Inc.*, 120 F.3d 117, 118–19 (8th Cir. 1997) (holding that "[l]itigants choose counsel at their peril"). Finally, and perhaps most significantly, any conflict Johanson may have had related to conflicting interests with and among his clients; Johanson owed no duties to Beazley. Accordingly, the releases in the Agreement are not unenforceable as to Smith's and Henry's claims against Beazley as a result of Johanson's alleged undue influence over Smith and Henry.[4]

      2.     Unconscionability

Sealey next asserts that the Agreement is unconscionable.

> "Unconscionable" is a word that defies lawyer-like definition. It is a term borrowed from moral philosophy and ethics. As close to a definition as we are likely to get is "that which 'affronts the sense of decency.'" A much-quoted judicial definition is "an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party."

---

[4]Assuming Sealey meant to argue that Smith and Henry signed the Agreement under duress, they expressly waived any such defense in the Agreement. Agreement ¶ 38 ("[E]ach Settling Party releases and waives any claim for fraud, coercion, or duress in connection with that Settling Party's execution and entry into this Agreement.").

*Covenant Health & Rehab. of Picayune, LP v. Estate of Moulds ex rel. Braddock*, 14 So. 3d 695, 699 (Miss. 2009) (quoting 7-29 Corbin on Contracts § 29.4 (2009)).  "Unconscionability can be procedural or substantive."  *Id.*

> Procedural unconscionability may be proved by showing "a lack of knowledge, lack of voluntariness, inconspicuous print, the use of complex legalistic language, disparity in sophistication or bargaining power of the parties and/or a lack of opportunity to study the contract and inquire about the contract terms." Substantive unconscionability may be proven by showing the terms of the . . . agreement to be oppressive.

*E. Ford, Inc. v. Taylor*, 826 So. 2d 709, 714 (Miss. 2002) (quoting *Pridgen v. Green Tree Fin. Servicing Corp.*, 88 F. Supp. 2d 655, 657 (S.D. Miss. 2000)).  In either case, "the doctrine of unconscionability . . . applie[s] only to the most egregious of contractual situations."  *Smith v. Express Check Advance of Miss., LLC*, 153 So. 3d 601, 607 (Miss. 2014).

Starting with procedural unconscionability, it is "most strongly shown in contracts of adhesion presented to a party on a 'take it or leave it basis.'"  *York v. Georgia-Pacific Corp.*, 585 F. Supp. 1265, 1278 (N.D. Miss. 1984)).  As the tenor and terms of the Agreement readily demonstrate, this was not a contract of adhesion.  But Sealey argues that because of "Johanson's conflicts of interest and the undue influence he exerted over Smith and Henry, [they] had no bargaining power and no meaningful opportunity to study, inquire about or negotiate the terms of the Agreement," rendering it procedurally unconscionable.  Pl.'s Mem. [28] at 23.

To begin, Sealey cites no authority indicating that a contract becomes procedurally unconscionable when a party chooses to be represented by counsel that may have a conflict *unrelated* to the party on the other side of the negotiations.  As stated, the alleged conflict was not created by some connection between Johanson and Beazley, a fact that distinguishes Sealey's primary authority for this argument.  *See Pierce v. Emigrant Mortg. Co.*, 463 F. Supp. 2d 221,

14

226 (D. Conn. 2006) (finding procedural unconscionability where plaintiffs did not realize their attorney also represented the opposing party to a negotiated contract).

Nor can the Court ignore the Agreement's language in which Smith and Henry warranted that they were "entering into this Agreement after consultation with, or the opportunity to consult with, counsel of [their] choosing" and agreed that they "contributed to the negotiations leading up to, and the preparation of, this Agreement."  Agreement ¶¶ 45, 50.  The Agreement was not a contract of adhesion, and the releases are not due to be set aside based on procedural unconscionability.[5]

Turning to substantive unconscionability, Sealey argues that reading the Agreement as releasing the claims he asserts here "would deny Smith and Henry the right to claim that Beazley's provision of . . . coverage comported with the terms of the Policy or the duties imposed under state law on liability insurers who provide coverage."  Pl.'s Mem. [28] at 24–25. But those are precisely the claims that the parties intended to compromise in the Coverage Action via the Agreement.

Moreover, the parties' compromise of disputed claims regarding Beazley's duties under its Policy does not involve "oppressive contract terms such that 'there is a one-sided agreement whereby one party is . . . left without a remedy for another party's nonperformance or breach.'" *Smith*, 153 So. 3d at 607 (quoting *Covenant Health & Rehab. of Picayune*, 14 So. 3d at 699)

_____

[5]Sealey claims that Smith and Henry "had no real understanding of the terms of the [Agreement] or how it impacted their rights and exposures" at the time they signed it.  Compl. [1] ¶ 108.  This assertion is belied by the warranties in the Agreement and is contrary to Mississippi law.  *See Anderson v. Equitable Life Assurance Soc'y of U.S.*, 248 F. Supp. 2d 584, 590 (S.D. Miss. 2003) ("Mississippi law creates a duty on contracting parties to read their contracts, and imputes the knowledge of that contract to the parties.").

(additional citations omitted).  Sealey, as assignee of Smith and Henry, is not left without a remedy for Beazley's breach of the Agreement; Sealey makes no such claim.  What Sealey really disputes is Beazley's compliance with the Agreement.  Ultimately though, he lacks the ability to resurrect claims that Smith and Henry, represented by counsel of their choice, agreed to release.  That is not a substantively unconscionable result.

IV.     Conclusion

        The Court has considered all arguments.  Those not specifically addressed would not have changed the outcome.  For the foregoing reasons, Beazley's Motion to Dismiss [20] is granted, and the claims asserted against it are dismissed with prejudice.  As the sole remaining defendants are nominal parties, Plaintiff is instructed to notify the Court within ten days of the entry of this Order whether final judgment may be entered.

        **SO ORDERED AND ADJUDGED** this the 16th day of August, 2016.

                                        s/ *Daniel P. Jordan III*
                                        UNITED STATES DISTRICT JUDGE